UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOBBY RAY LONG,<br>    *Plaintiff,* | ) <br> ) <br> ) | |
| *vs.* | ) | 1:12-cv-00569-JMS-DML |
| | ) | |
| GREG BALLARD, MAYOR OF INDIANAPOLIS,<br>IN HIS OFFICIAL CAPACITY, CITY-COUNTY<br>COUNCIL OF INDIANAPOLIS, INDIANA, JOHN<br>BARTH, JEFF MILLER, BRIAN MAHERN,<br>VERNON BROWN, BEN HUNTER, ANGELA<br>MANSFIELD, AND MAGGIE LEWIS,<br>    *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |

## ORDER

Presently pending before the Court in this constitutional challenge to a smoking ordinance enacted by the Consolidated City of Indianapolis and Marion County are *pro se* Plaintiff Bobby Ray Long's Request for a Preliminary Injunction or a Temporary Restraining Order, [dkt. 7], and Motions to Dismiss filed by Defendants Mayor of Indianapolis Greg Ballard ("Mayor Ballard") and the City-County Council of Indianapolis ("the City"), [dkt. 31], and Defendants John Barth, Jeff Miller, Brian Mahern, Vernon Brown, Ben Hunter, Angela Mansfield, and Maggie Lewis (collectively, "the Council Members"), [dkt. 41].

## I.
### RELEVANT BACKGROUND

### A. The Ordinance

In 2005, the City passed General Ordinance No. 44,2005 ("the 2005 Ordinance"), which prohibited smoking in all places of employment and public places, subject to certain exceptions including bars and taverns. [Dkt. 31-1 at 2-7.] The City expanded the scope of the 2005 Ordinance in 2012 by passing General Ordinance No. 12,2012 ("the 2012 Ordinance"), which prohib-

- 1 -

its smoking in bars or taverns, among most other public places. [Dkt. 31-2.] The 2012 Ordinance exempts private clubs (subject to certain requirements), retail tobacco stores, certain tobacco businesses, and off-track betting facilities. [*Id.* at 2-3.][1]

**B. Mr. Long's Lawsuit**

On April 30, 2012, Mr. Long filed a 42 U.S.C. § 1983 Civil Rights Complaint, [dkt. 1], and subsequently filed the operative Amended 42 U.S.C. § 1983 Civil Rights or Federal Question Complaint, [dkt. 15], on June 14, 2012. Mr. Long alleges that he is a resident of Indianapolis and a cigarette smoker. [*Id.* at 4, ¶¶ 8-9.] He asserts that Defendants acted with "deliberate indifference" in passing the 2012 Ordinance because they knew it would "cause [him] to be exposed to, and suffer through, the weather elements of heat, rain, snow, and freezing cold, while he stands outside Taverns/Bars to smoke cigarettes, and they knew it would be humiliating to [him]." [*Id.* at 5-6, ¶ 13.] Mr. Long also alleges that the 2012 Ordinance is "unreasonably selective" because it does not prohibit smoking in "private clubs, veterans halls, and casinos." [*Id.* at 6, ¶ 15.] Mr. Long asserts that he could be "subjected to legal proceedings and fines in a State Court" as "a pedestrian simply walking by a Tavern/Bar door while smoking a cigarette." [*Id.* at 7, ¶ 17.] He claims that the 2012 Ordinance is "an underhanded way to collect money from alleged violators…and collect money from Tavern/Bar owners who seek city permits for outside drinking and smoking areas." [*Id.* at 7, ¶ 18.]

Mr. Long claims that the 2012 Ordinance violates: (1) Article 4, § 2 of the United States Constitution, because it does not afford him the same privileges and immunities afforded to citi-

---

[1] In their brief in support of their Motion to Dismiss, the City and Mayor Ballard provide a detailed description of both the 2005 Ordinance and the 2012 Ordinance. [Dkt. 32 at 16-20.] For purposes of this litigation and of resolving the pending motions, however, the 2012 Ordinance's ban on smoking in bars and taverns, and the fact that it allows smoking in private clubs and casinos, are the only relevant provisions.

zens of other states, [*id.* at 8, ¶ 20]; (2) his right under the Fourth Amendment of the United States Constitution to be secure in his person and effects, [*id.* at 9, ¶ 21]; and (3) his right to equal protection under the Fourteenth Amendment of the United States Constitution, [*id.* at 9-10, ¶ 22].  He seeks a declaratory judgment, a preliminary injunction or temporary restraining order prohibiting Defendants from enforcing the 2012 Ordinance, compensatory and punitive damages, and attorneys' fees and costs.  [*Id.* at 10-11, ¶¶ 1-6.]

Several other lawsuits brought by bars/taverns and bar/tavern owners which challenge the 2012 Ordinance are pending in this district, and have been consolidated, along with this matter, into *Goodpaster v. City of Indianapolis, et al.*, 1:12-cv-669-RLY-DML.  [*See* dkt. 34 in *Good-paster* case, consolidating *Wymer v. Mayor, et al.*, 1:12-cv-690-TWP-DML; *Brady v. Mayor, et al.*, 1:12-cv-730-TWP-DML; *Donselaar et al. v. Mayor, et al.*, 1:12-cv-737-TWP-DML; and this case.] [2]  Mr. Long, however, has chosen to disavow the *Goodpaster* complaint and to proceed according to his own Amended Complaint here.  [*See* dkt. 26 at 2 ("[t]he court understands Mr. Long's position to be, unlike that of the other *Goodpaster* plaintiffs, that he disavows the *Good-paster* complaint and wants to proceed according to his own handwritten *pro se* complaint.  That is his right, so the court will allow it….").]

## II.
### STANDARD OF REVIEW

### A.  Motions to Dismiss

Defendants have moved to dismiss Mr. Long's Amended Complaint under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  [Dkts. 31 at 3; 41 at 1.]

---

[2] "[A] district court can 'take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.'…Federal courts can take judicial notice of the decisions of both federal and non-federal courts."  *Matthews v. Capital One Bank*, 2008 U.S. Dist. LEXIS 90157, *6-7 (S.D. Ind. 2008).

The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. 544). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (citing *Iqbal*, 129 S.Ct. at 1951). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

### B.  Motion for a Preliminary Injunction[3]

In order to obtain a preliminary injunction, the moving party must demonstrate: (a) a reasonable likelihood of success on the merits; (b) that he does not have an adequate remedy at law; and (c) that he will suffer irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the movant makes that threshold showing, the Court must then weigh the balance of harm to the parties if the injunction is granted or denied, and also determine the effect of an injunction on the public

---

[3] Mr. Long also requested a temporary restraining order in his Request for a Preliminary Injunction or a Temporary Restraining Order, [dkt. 7]. The Court, however, already denied the request for a temporary restraining order due to Mr. Long's failure to comply with Fed. R. Civ. P. 65(b)(1). [Dkt. 8.]

interest.  *ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012).  As for the strength of the mov-

ing party's likelihood of success on the merits, "[t]he more likely it is that [the moving party]

will win its case on the merits, the less the balance of harms need weigh in its favor."  *Girl*

*Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d

1079, 1100 (7th Cir. 2008).

### III.
#### DISCUSSION

#### A.  Motions to Dismiss

In their Motions to Dismiss, Defendants argue that Mr. Long fails to state claims for vio-

lation of his Article 4, § 2 right to be afforded the same privileges and immunities of the citizens

in other states, for violation of his Fourth Amendment right to be secure in his person and ef-

fects, or for violation of his right to equal protection under the Fourteenth Amendment.  The

Court will address each argument in turn.

##### 1.  Article 4, § 2 Claim

Defendants argue that the 2012 Ordinance does not violate Article 4, § 2 of the United

States Constitution because it does not prohibit states from denying rights to all citizens equally,

and is only meant to protect non-residents from discrimination where there is no reason for the

discrimination other than that they are citizens of different states.  [Dkt. 32 at 51-52.]  Because

the 2012 Ordinance applies equally to all persons within Indianapolis, regardless of which state

they are from, Defendants argue that it does not violate Article 4, § 2.

Mr. Long responds that Article 4, § 2 requires that citizens of Indianapolis be afforded

"'all' privileges and immunities afforded to other American Citizens in every other City and

State in the United States including…other Marion County Indiana Cities…."  [Dkt. 61 at 4.]

Mr. Long also argues that he has a right to not have to "position [himself] outside a tavern or bar

to suffer harsh weather conditions while [he] smoke[s] tobacco," to not "fear being arrested by police for public intoxication as [he] stand[s] outside a tavern or bar smoking tobacco," and to "not be afraid of arrest and criminal proceedings in a State Court for smoking tobacco while walking by a tavern or bar because a smoking ban does not protect pedestrians." [*Id.* at 5.][4]

Defendants reply that Mr. Long's reading of Article 4, § 2 is not supported by any authority or the plain language of the provision, which grants certain privileges and immunities while "<u>in</u> the several States." [Dkt. 66 at 3 (emphasis in original).] Defendants also argue that Mr. Long's interpretation would "allow one jurisdiction to impose its will on the citizens of another." [*Id.* at 4.]

Article 4, § 2 provides "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2. Mr. Long's primary argument is that this provision entitles him to the same rights enjoyed by citizens of other states, in their states. His argument is flawed for several reasons. First, Mr. Long does not point to any authority for such a broad reading of Article 4, § 2 and, in fact, there is none. Second, courts interpreting this provision have held that it prohibits states from denying citizens of other states the rights that their citizens enjoy, simply because they are citizens of different states. *See, e.g., Saenz v. Roe*, 526 U.S. 489, 501 (1999) (under Article 4, § 2, "a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits"). In other words, a state cannot discriminate against citizens of another state for no substantial reason beyond the fact that they are citizens of another state. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948).

---

[4] Mr. Long also sets forth arguments relating to having a fundamental right to smoke in the section of his response devoted to his Article 4, § 2 claim, [dkt. 61 at 5]. Those arguments, however, are irrelevant to that claim and are more properly addressed in connection with his Fourteenth Amendment equal protection claim, discussed below.

The interpretation of Article 4, § 2 that Mr. Long urges would turn that provision on its head, making it grant citizens of one state all of the rights and freedoms provided to citizens of other states, rather than simply providing all individuals in one state the same rights – no matter their citizenship.  Mr. Long's interpretation would be contrary to the plain language of the provision, which applies to citizens "in" the several states.[5]  U.S. Const. art. IV, § 2.  The use of the word "in" indicates an intent to grant equal rights to individuals while they are "in" that state, no matter their state of citizenship.  *Toomer*, 334 U.S. at 395 ("[t]he primary purpose of [Article 4, § 2]…was to help fuse into one Nation a collection of independent, sovereign States.  It was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy").  Mr. Long's Article 4, § 2 claim fails as a matter of law.

### 2.  *Fourteenth Amendment Equal Protection Claim*

In support of their Motions to Dismiss, Defendants argue that Mr. Long, as a smoker, is not a member of a suspect or quasi-suspect class, that therefore the 2012 Ordinance is subject to rational basis review, and that such a rational basis exists.  [Dkt. 32 at 36-41.]  Mr. Long asserts that he has a fundamental right to smoke because Congress has not outlawed the sale or use of tobacco, the United States economy is "largely supported by the sale and use of tobacco," "he paid taxes on the tobacco he smokes," and "it is highly unlikely…Congress will ever outlaw tobacco sales and use" despite "all the alleged scientific and medical harm it causes."  [Dkt. 61 at 5.]  Mr. Long argues further that there is no rational basis for the 2012 Ordinance because: (1) it ignores "the health of non-smoking employees in the gambling casinos and veteran halls;" (2) it "exacerbate[s] [his] unhealthy smoking habit by…mandat[ing that he] position himself outside a

---

[5] Mr. Long incorrectly quotes Article 4, § 2 to provide that "[t]he citizens of each State shall be entitled to all privileges and immunities of the citizens *of* the Several States."  [Dkt. 61 at 4 (emphasis added).]  The correct language is "*in* the Several States."  U.S. Const. art. IV, § 2 (emphasis added).

tavern or bar in harsh weather conditions while smoking;" and (3) it ignores "the deadly exhaust fumes from automobiles that in all probability sickens people worse than does second hand smoke." [*Id.* at 7.] He asserts that the 2012 Ordinance is simply an "underhanded way to generate money from fines imposed on violaters [sic] of the smoking ban." [*Id.* at 8.]

In analyzing Mr. Long's Fourteenth Amendment equal protection claim, the Court must first determine whether the 2012 Ordinance "targets a suspect class or addresses a fundamental right." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 637 (7th Cir. 2007). If it does neither, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

### a.  Fundamental Right or Suspect Class

Federal circuit and district courts have consistently found that the right to smoke is not a fundamental right guaranteed by the Constitution. *See, e.g., Gallagher v. City of Clayton*, 699 F.3d 1013, 1017-18 (8th Cir. 2012); *Am. Legion Post No. 149 v. Dep't of Health*, 192 P.3d 306, 322 (Wash. 2008); *Steele v. County of Beltrami*, 238 Fed. Appx. 180, 181 (8th Cir. 2007) (collecting cases); *Batte-Holmgren v. Comm'r of Pub. Health*, 914 A.2d 996, 1008 (Conn. 2007); *Players, Inc. v. City of New York*, 371 F.Supp.2d 522, 542 (S.D. N.Y. 2005); *City of N. Miami v. Kurtz*, 653 So.2d 1025, 1028 (Fla. 1995); *Grusendorf v. City of Oklahoma City*, 816 F.2d 539, 541 (10th Cir. 1987).

Mr. Long's arguments in support of his claim that smoking is a fundamental right are unavailing. The fact that tobacco use is lawful, that the sale of tobacco is part of the United States economy, that he pays taxes on the tobacco he purchases, and that he believes it is unlikely to-

bacco use will ever be outlawed are irrelevant to the issue of whether smoking tobacco is a fundamental right.  Courts have routinely held that it is not.

As for whether the class of individuals the 2012 Ordinance targets – those who smoke – is a suspect class, Mr. Long does not set forth any allegations in his Amended Complaint that it is.  Instead, he focuses only on how the 2012 Ordinance negatively affects smokers.  In any event, both circuit and district courts have held that smokers are not a suspect class for purposes of an equal protection analysis.  *See, e.g., Gallagher*, 699 F.3d at 1018 (suspect classes consist of individuals "'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process,' [and c]ourts considering claims that smokers constitute a suspect or quasi-suspect class have rejected them, noting 'that smokers as a class lack the[se] typical characteristics that traditionally have triggered heightened scrutiny when the governmental action targets a group'") (citations omitted); *Smith v. Boyd*, 2011 U.S. Dist. LEXIS 57553, *20 (M.D. Ala. 2011); *Giordano v. Conn. Valley Hosp.*, 2008 U.S. Dist. LEXIS 98338, *23-24 (D. Conn. 2008); *Castaways Backwater Café, Inc., v. Marstiller*, 2006 U.S. Dist. LEXIS 60317, *11 (M.D. Fla. 2006).

### b.  Rational Basis

Because the right to smoke is not a fundamental right, and smokers are not a suspect class, Mr. Long's equal protection claim is subject to rational basis review.  *Goodpaster v. City of Indianapolis, et al.*, 2013 U.S. Dist. LEXIS 30257, *28 (S.D. Ind. 2013).  Accordingly, the 2012 Ordinance must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *FCC v. Beach Communications*, 508 U.S. 307, 313 (1993).  Under this standard, an ordinance carries a "strong presumption of validity."  *Id.* at

314-15.  "[T]he burden is on the one attacking the legislative arrangement to negative every con-

ceivable basis which might support it…whether or not the basis has a foundation in the record."

*Heller v. Doe by Doe*, 509 U.S. 312, 320-21 (1993) (citations and quotations omitted).

Defendants have articulated several rational bases for the 2012 Ordinance, including: (1)

"the goal of reducing the public's exposure to secondhand smoke and its health risks," [dkt. 32 at

30]; (2) reducing the nuisance of secondhand smoke to non-smokers, [*id.* at 33]; and (3) the po-

tential deterrent effect smoking has on businesses and on the City of Indianapolis, [*id.* at 34].

Mr. Long does not attempt to refute any of those bases, but instead argues what the 2012 Ordi-

nance *does not* do – *e.g.*, he asserts that it does not protect the health of non-smoking employees

in casinos and veterans halls, it does not protect him and other smokers from harsh weather con-

ditions while smoking outside a bar or tavern, and it does not protect anyone from "deadly ex-

haust fumes from automobiles."  [Dkt. 61 at 7.]

"Legislative classifications do not violate the Equal Protection Clause merely because

they are, to some degree, overinclusive or underinclusive."  *Goodpaster*, 2013 U.S. Dist. LEXIS

30257 at *28-29 (*citing New York City Transit Authority v. Beazer*, 440 U.S. 568, 593 n. 39

(1979); *Lamers Dairy, Inc. v. U.S. Dep't of Agr.*, 379 F.3d 466, 475 (7th Cir. 2004); *Zehner v.*

*Trigg*, 133 F.3d 459, 463 (7th Cir. 1997)).  "[T]he classification need not be the most narrowly

tailored means available to achieve the desired end."  *Zehner*, 133 F.3d at 463.  Additionally, "a

legislature is not required to 'strike all evils at the same time or in the same way,' and it also

'may implement [its] program step by step…adopting regulations that only partially ameliorate a

perceived evil and deferring complete elimination of the evil to future regulations.'"  *Goodpas-*

*ter*, 2013 U.S. Dist. LEXIS 30257 at *29 (*quoting Minnesota v. Clover Leaf Creamery Co.*, 449

U.S. 456, 466 (1981)).  The fact that the 2012 Ordinance – which has been a "step-by-step pro-

cess," *Goodpaster*, 2013 U.S. Dist. LEXIS 30257 at *29 – does not protect customers of veterans halls or casinos from secondhand smoke, does not protect Mr. Long and his fellow smokers from the weather, and does not protect the public from automobile exhaust does not undercut the clearly articulated rational bases for the 2012 Ordinance.  *See id.* at *30-31 (recognizing that distinction in 2012 Ordinance between certain types of establishments also has a rational basis). Accordingly, Mr. Long's Fourteenth Amendment equal protection claim fails as a matter of law.

### 3.  Fourth Amendment Claim

In response to Defendants' Motions to Dismiss related to Mr. Long's Fourth Amendment claim, Mr. Long states that he "respectfully waives this claim because he believes it not to be legally viable."  [Dkt. 61 at 6.]  Accordingly, the Court dismisses that claim.

### B.  Motion for Preliminary Injunction

Based on the above analysis, Mr. Long does not succeed on the merits of his claims. However, even though Mr. Long has not satisfied this threshold requirement for a preliminary injunction, the Court will still examine the other preliminary injunction requirements.  *Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1087 ("[w]here, as here, a district court decides that a party moving for a preliminary injunction has not satisfied one of the threshold requirements, we have encouraged the court to conduct at least a cursory examination of all the aforementioned preliminary injunction considerations").

### 1.  Adequate Remedy at Law

Mr. Long does not argue that there is no adequate remedy at law, but the Court will still consider this factor.  Because the harm that Mr. Long alleges – whether or not it is legitimate harm – results from the 2012 Ordinance, so long as the 2012 Ordinance remains in effect, Mr.

Long will be impacted.  Accordingly, traditional legal remedies would be inadequate to make him whole.

### 2.  *Irreparable Harm*

Mr. Long argues that he will suffer irreparable harm if he must continue to comply with the 2012 Ordinance because: (1) he will be exposed to "harsh weather elements of heat, dangerous sun rays that could cause skin cancer, rain, and freezing cold in the winter that could cause plaintiff to get the flu or some other severe illness;" and (2) he could be arrested, fined, and imprisoned for public intoxication if a police officer smells alcohol on his breath while he is smoking outside a bar or tavern.  [Dkt. 60 at 5-6.]  Defendants respond that Mr. Long's assertion of irreparable harm "rings hollow" because he is already damaging his health by smoking, that he can use sunscreen or clothing to protect himself from the weather, and that he would not be subject to arrest for public intoxication simply for stepping outside to smoke after drinking alcohol. [Dkt. 66 at 14.]

To demonstrate irreparable harm, Mr. Long must show that he "will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial…."  *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).  The Court finds that Mr. Long's only claimed harms – being exposed to harsh weather and risking arrest for public intoxication – are not legitimate and, therefore, not irreparable.  As Defendants correctly note, Mr. Long can protect himself from the elements while smoking.  Moreover, nothing prevents him from smoking inside, either at an establishment where smoking is not banned by the 2012 Ordinance or in the comfort of his own home.  And simply stepping outside a bar or tavern to smoke will not subject him to arrest, fines, or imprisonment for public intoxication unless he meets the elements of Indiana Code § 7.1-5-1-3.  Any harm

- 12 -

from an arrest, fines, or imprisonment, therefore, would be caused by his level of intoxication, not by the fact that he chose to step outside to smoke because he could not do so inside.  And, in any event, he could be arrested for public intoxication while *inside* a bar if he met the statute's prerequisites.  *See, e.g., Denzel v. State*, 948 N.E.2d 808, 808 (Ind. Sup. Ct. 2011) (noting that individual was arrested for public intoxication when he had bloodshot eyes, slurred speech, and a wobbly gait, and refused to leave a bar).  The Court finds that Mr. Long has not established that he will suffer irreparable harm absent a preliminary injunction.

### 3.  Balance of Harms

Although Mr. Long has not demonstrated a likelihood of success on the merits or that he will suffer irreparable harm absent a preliminary injunction, the Court will address the balance of harms.  In connection with this factor, Mr. Long argues that his injuries (*i.e.*, being exposed to harsh weather and risking arrest, fines, or imprisonment for public intoxication) "far outweigh whatever injury the proposed injunction may cause the defendants," and that "[i]t is unlikely that the defendants can produce one non-smoking employee of a tavern or bar who has either died from second hand smoke or got [sic] seriously ill from second hand smoke due to working in a tavern or bar where tobacco smoking exist[s]."  [Dkt. 60 at 6.][6]  Defendants disagree, arguing that the interests in reducing the public's exposure to secondhand smoke, and in preserving the separation of legislative powers, outweigh any harm to Mr. Long, "who is simply disappointed that he cannot smoke inside bars."  [Dkt. 66 at 14-18.]

The Court will use a sliding scale analysis in balancing the harm Mr. Long will suffer absent a preliminary injunction with the harm Defendants will suffer if an injunction issues:  "[T]he

---

[6] The Court is puzzled by this argument.  Defendants need not "produce" such a person but, in any event, Mr. Long has never disputed Defendants' claim that secondhand smoke is harmful to non-smokers.

greater the movant's chance of success on the merits, the less strong a showing must it make that the balance of harms is in its favor." *Storck USA L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Because, as discussed above, Mr. Long cannot succeed on the merits of his claims, the harm he will face if the preliminary injunction is denied is greatly outweighed by the harm Defendants would face if the injunction were issued. The fact that Mr. Long has not identified any legitimate, irreparable harm, balanced with the harm to the public interest if a preliminary injunction issues due to the public's exposure to secondhand smoke, leads the Court to conclude that the balance of harms weighs in favor of Defendants, and Mr. Long is not entitled to a preliminary injunction. *Id.* (granting an injunction enjoining enforcement of 2012 Ordinance would "harm the public interest because nonsmokers who live and work in the City would face more exposure to [secondhand smoke]").

## IV.
### CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Mayor Ballard and the City, [dkt. 31], and the Motion to Dismiss filed by the Council Members, [dkt. 41], are both **GRANTED**. Additionally, Mr. Long's Request for a Preliminary Injunction or a Temporary Restraining Order, [dkt. 7], is **DENIED**. This action is **DISMISSED WITH PREJUDICE**.

03/13/2013

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

- 14 -

**Distribution via ECF only:**

Cameron G. Starnes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
cameron.starnes@indy.gov

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org

**Distribution via U.S. Mail only:**

BOBBY RAY LONG
842 North Dequincy Street
Indianapolis, IN 46201